[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO MODIFY ALIMONY CODED #123
Many of the facts that give rise to the above motion are not in dispute. The marriage between the parties was dissolved on July 14, 1988. The court approved an agreement between the parties. That agreement provided as follows regarding the alimony:
 The Husband shall pay to the Wife the sum of Two Hundred Fifty ($250.00) Dollars per week as alimony. The said payments shall terminate upon the earliest of the following: death of the Husband, death of the Wife, remarriage of the wife, cohabitation of the wife pursuant to the Statute and shall be subject to a second look with respect to the parties health, income, assets, expenses and liabilities on July 1, 1998. The above second look does not prevent either Husband or Wife from seeking a modification prior to July 1, 1998. The Husband waives any and all claims to alimony.
The parties are in dispute as to the meaning of the second look language in the separation agreement. The plaintiff makes the following argument regarding the interpretation of the second look language:
 A second look seemingly means that alimony would be specifically reviewed, de novo, to ascertain if the situation is such that the alimony should continue, terminate or be modified, based on the new circumstances. Similarly, in a modification proceeding, once the threshold test of a "substantial change in circumstances" has been met, the court then looks at the new circumstances to decide on an appropriate level of alimony. In summary, these two avenues seem to be a distinction with out a difference.
The court is no persuaded by that argument.
 The interpretation of a separation agreement is an issue of fact for the trial court.
As stated in Barnard v. Barnard, 214 Conn. 99, 116 (1990);
 Parties generally do not inset meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible.
CT Page 12008
The second look language of the agreement only requires that the court consider the parties health, income, assets, expenses and liabilities on July 1, 1998. On the other hand, the right to seek a modification prior to July 1, 1998 would involve Section46b-86 that provides that the court may at any time modify alimony upon a showing of a substantial change in the circumstances of either party. When a party proves that their has been a substantial change in circumstances, the court then considers all of the provisions of Section 46b-82 which involve the length of the marriage, the cause of the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties.
The defendant in this case by virtue of his September 28, 1998 amendment to the citation to modification seeks to have the court only invoke the second look language of the separation agreement. Under the second look language of the separation agreement is not necessary for the court to find a substantial change in circumstances in order to modify the existing alimony order.
The court finds the following facts regarding the parties' health, income, assets, expenses and liabilities.
On August 8, 1998 the plaintiff had an angioplasty due to her arteries being blocked. She is presently being monitored for breast tumors.
The plaintiff has gross weekly income of $731.00. She has a net weekly income of $537.00. She also received $71.00 weekly in dividends and interest less approximately $8.00 taxes. Her net weekly income not including the $250.00 alimony payments from the defendant is approximateiy $600.00 weekly. She is employed as a school counselor.
The plaintiff owns a home at 40 Holly Road, Cheshire, Connecticut with a total value of $174,000.00 and mortgages totaling $99,022.00 and an equity of $74,0978.00. She owns a 1995 Honda with a value of $17,000.00 and no loan. She owns stocks, bonds and mutual funds totaling $393,067.00. She has an IRA with a balance of $20,578.00 as of June 26, 1998 and a TIAA-CREF with a balance of $23,206.00 as of June 1998. She also owns a time share in Orlando, Florida with a value of $20,000.00. Her $393,067.00 Merrill Lynch account is as a result of having CT Page 12009 received inheritance money. She received $393,067.00 from a trust fund approximately August 28, 1998.
The plaintiff has weekly expenses that total $1,016.00. She does not have any liabilities.
The defendant is in good health.
The defendant voluntarily terminated his employment on May 15, 1996. He received four months of salary plus vacation pay totaling approximately $32,000.00 and netting approximately $25,000.00. His gross annual income at that time was approximately $92,000.00 with a net annual income of approximately $64,000.00. The defendant has not made any attempt to seek employment since May 15, 1996. The defendant was 61 years old when he voluntarily quit his employment. He does not intend to go back to work even if he were to find a job that interested him. The defendant receives a pension of approximately $1,300.00 monthly and social security of approximately $1,076.00 monthly. He combines the two on his financial affidavit for gross weekly pension/social security of $549.23 and a net of $466.85. He also has a pension from Michaels Jewelers of $61.75 weekly and interest on his checking account of $2.00 weekly for total net weekly income from all sources of $530.60.
The court finds that the defendant has voluntarily reduced his income by voluntarily terminating his employment and therefore in determining this motion the court is including in the defendant's income his approximate $64,000.00 annual net income that he had at the time that he terminated his employment.
The defendant owns a motor vehicle with a value of $3,500.00 and no loan. He has bank accounts consisting of the following: savings and deposits totaling $17,053.88 of which he received $6,462.30 from an inheritance from his mother, $3,211.12 from his Michael's Jewelers pension, $7,253.62 being the balance from the dissolution settlement and $116.84 of interest. The balance of $7,253.62 is from the approximate $21,000.00 that he received as a result of the family home having been sold. He has a checking account with $263.71 balance and an alimony account with a $78.26 balance. He also has an IRA with a balance of $163,241.00 as of July 6, 1998. That is the balance as of July 6, 1998. He also owns $2,000.00 in jewelry.
The defendant's financial affidavit dated September 8, 1998 CT Page 12010 shows basic weekly expenses totaling $990.44. He contributes approximately $1,000.00 monthly towards the mortgage and taxes on the home that he resides in. He pays approximately one-half of the total amount due for taxes and mortgage and his present wife pays the other half.
His only liability is for undetermined legal fees arising out of this proceeding.
In determining whether to modify the present alimony order, this court has considered only the parties' health, income, (including the defendant's voluntary reduction of income) assets, expenses and liabilities.
 ORDER
The motion to modify alimony is denied.
Axelrod, J.